**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CR 03-1167-PHX-DGC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER DENYING** |
| | ) | **MOTION TO DISMISS** |
| | ) | |
| Robert McKay, | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Robert McKay's Motion to Dismiss for Violation of Right to Speedy Trial. (Dkt. 945.)  The Government filed a response opposing the motion (dkt. 1053) and Defendant filed a reply (dkt. 1076).  For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

The original indictment in this case, charging Defendant McKay and fifteen co-defendants with various criminal counts, was filed on November 18, 2003.  (Dkt. 1.) Defendant was charged with one count of Violent Crime in Aid of Racketeering ("VICAR"). Defendant entered his initial appearance on December 3, 2003, and trial was set for January 13, 2004.  Defendant was released with conditions on December 5, 2003.

On January 8, 2004, this Court reset the trial for February 10, 2004, and found that the 28-day delay between the trial dates was excludable for speedy trial purposes under the Speedy Trial Act, 18 U.S.C. § 3161 (the "Act").  (Dkt. 167 at 2.)

1    On December 23, 2003, the Government filed a Notice of Complex Criminal Matter.

2    (Dkt. 138.)  On February 2, 2004, the Court designated the case complex for speedy trial

3    purposes under the Act and set the trial date for October 12, 2004.  (Dkt. 200, ¶ 2.)  On June

4    17, 2004, the Court reset the trial date for January 18, 2005, again finding that this is a

5    complex case and excluding time under the Act.  (Dkt. 292, ¶ 5.)

6    On August 31, 2004, Defendant had contact with an agent of the Bureau of Alcohol

7    Tobacco, Firearms and Explosives ("ATF") and allegedly threatened the agent with physical

8    harm.  On September 1, 2004, Defendant was charged by complaint with threatening a

9    federal officer.  On September 10, 2004, United States Magistrate Judge Bernardo Velasco

10   issued an order of detention, finding that Defendant was a flight risk and a danger to the

11   community.  This Court subsequently affirmed Magistrate Judge Velasco's order.  (Dkt.

12   645.)

13   A superceding indictment was filed on September 30, 2004.  (Dkt. 384.)  Defendant

14   was charged with an additional VICAR count and a count of threatening a federal law

15   enforcement officer.  A second superceding indictment was filed on January 19, 2005.  (Dkt.

16   541.)  On May 10, 2005, the Court reset the trial date for February 14, 2006, again

17   confirming that this was a complex case and excluding time under the Act.  (Dkt. 693, ¶ 4.)

18   On September 14, 2005, the Court continued the trial to the final date of April 25, 2006.

19   (Dkt. 813.)  The Court again noted that this was a complex case and excluded time under the

20   Act.  (Id. at ¶ II.J)

21   Defendant argues that his Sixth Amendment right to a speedy has been violated and

22   as a result the charges against him should be dismissed.

23                                        **ANALYSIS**

24   The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused

25   shall enjoy the right to a speedy . . . trial."  To evaluate a claimed violation of the Sixth

26   Amendment right to a speedy trial the Court applies a balancing test involving four factors:

27   (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his

28

1  right to a speedy trial; and (4) the prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514,

2  530 (1972).

3  **1.    Length of the delay.**

4          The first Barker factor, the length of the delay, is a threshold issue.  Defendant "must

5  show that the period between indictment and trial passes a threshold point of 'presumptively

6  prejudicial' delay."  United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993).  If he

7  makes such a showing, the Court proceeds to consider the other Barker factors.  Id. While

8  there is no bright-line rule, courts generally have found that delays approaching one year are

9  presumptively prejudicial.  Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992).

10 Defendant was first indicted in this matter in November 2003, approximately 30 months

11 before the trial date of April 25, 2006.

12         This delay is presumptively prejudicial and sufficient to trigger further analysis.  The

13 Court also finds that the delay is lengthy enough to militate moderately in Defendant's favor

14 as the Court assesses the Barker factors.  Cf. United States v. Gregory, 322 F.3d 1157, 1162

15 (9th Cir. 2003) (22-month delay exceeded the threshold but was not "excessively long" and

16 did not "weigh heavily in Gregory's favor"); United States v. Tahn Lam, 251 F.3d 852, 857

17 (9th Cir. 2001) (15-month delay was long enough to trigger a Barker inquiry, but only

18 "militate[d] slightly in Lam's favor"); Beamon, 992 F.2d at 1014 (17-month and 20-month

19 delays passed the threshold but were not "great").

20 **2.    Reason for the delay.**

21         As the Supreme Court noted in Barker, a finding that the Government intentionally

22 delayed its prosecution in order to "hamper the defense" or gain some advantage at trial

23 would weigh heavily in favor of Defendant's claim, while a "more neutral reason such as

24 negligence . . . should be weighed less heavily but nevertheless should be considered . . ."

25 407 U.S. at 531.  Defendant cites the Government's failure to provide timely and complete

26 discovery as a cause of the delay.  The Court has considered this aspect of the Government's

27

28

- 3 -

1   conduct in a variety of contexts, including a co-defendant's motion to dismiss the indictment

2   on speedy trial grounds (dkt. 583) and motions to dismiss for disclosure violations (e.g., dkts.

3   944, 1015).  The Court has found that the Government's conduct was not "flagrant" (dkt. 712

4   at 5) or "outrageous" (dkt. 1132 at 3), but has noted that "the Government's disclosure efforts

5   might at times be characterized as negligent or incompetent."  (Dkt. 1132 at 4.)  In an order

6   dated September 14, 2005, the Court, citing the Government's handling of its discovery

7   obligations, continued the trial date from February 14 to April 25, 2006.  (Dkt. 813.)

8           In addition to these discovery issues, however, a number of legitimate factors have

9   contributed to the length of the delay between indictment and trial.  The most significant of

10  these is the size, complexity, and seriousness of the case.  In Barker, the Supreme Court

11  explained that "the delay that can be tolerated for an ordinary street crime is considerably less

12  than for a serious, complex conspiracy charge."  407 U.S. at 530–31 (see Lam, 251 F.3d at

13  856).

14          The second superceding indictment charges 16 defendants with 43 counts involving

15  offenses alleged to have occurred over a period of four years.  The charges include

16  racketeering under the Racketeer Influenced and Corrupt Organization Act ("RICO") and

17  RICO conspiracy, with the RICO counts encompassing 20 predicate acts.  The second

18  superceding indictment asserts numerous narcotics and firearms violations and charges

19  several defendants with violent crimes, including murder, attempted murder, and conspiracy

20  to murder.  Trial preparation has entailed the review of an enormous volume of material,

21  including physical evidence, videotapes, and recorded conversations. The seriousness of the

22  charges is also reflected in the fact that at the outset of the case the death penalty was a

23  potential sentence; the Justice Department's review of the file necessarily occasioned a delay

24  in the proceedings.  See United States v. Murillo, 288 F.3d 1126, 1131 (9th Cir. 2002)

25  (Justice Department's consideration of the death penalty was a factor in 13-month delay);

26  Lam, 251 F.3d at 856 (fact that the case "potentially involved the death penalty" added to its

27

28

1  complexity and the attendant delay).  The size and complexity of the case have also

2  occasioned an extensive pretrial motion practice.  See Doggett, 505 U.S. at 656 (listing the

3  government's need for time to oppose the defendant's motions as a "wholly justifiable" cause

4  for pretrial delay); United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993).

5  Thus, although some of the delay is attributable to the Government's poor handling

6  of discovery, a greater portion has resulted from the scope and seriousness of the case.  This

7  would have been a long and complicated trial for which to prepare even if the Government

8  had complied perfectly with its disclosure obligations at the very outset of the litigation.

9  Therefore, the Court finds that this factor only slightly favors Defendant.

10  **3.  Defendant's assertion of his right to a speedy trial.**

11  Defendant has been present or represented at each of the fourteen case management

12  conferences held to date.  Trial extensions have been discussed and requested at several of

13  these conferences.  (Dkts. 200, 292, 693, 813.)  The Government asserts that it has never

14  sought a continuance and that McKay has never objected to continuances sought by other

15  Defendants.  (Dkt. 1053.)  The Government further notes that McKay has joined in at least

16  one of these requests.  (Dkt. 152.)  Defendant McKay does not disagree with any of these

17  assertions in his reply memorandum.  (Dkt. 1076.)

18  The Court's review of the record shows that Defendant McKay did object to the six-

19  month continuance sought by Defendant Johnston at the case management conference held

20  on August 25, 2005.  The Court rejected Defendant Johnston's request and instead granted

21  a two-month continuance, setting the final and firm trial date of April 25, 2006.  (Dkt. 813.)

22  Thus, it appears that Defendant McKay asserted his speedy trial rights only with respect to

23  the final two-month extension of the trial.  Defendant's motion to dismiss based on denial

24  of a speedy trial was not filed until more than two years after the original indictment. (Dkt.

25  945.)

26

27

28

1    Thus, Defendant McKay's assertion of his speedy trial rights is only a recent

2  development in this case.  A substantial majority of the delay about which he now complains

3  occurred without his objection or motion.  As a result, this factor of the <u>Barker</u> analysis

4  weighs heavily against him.  As the Supreme Court has explained, "failure to assert the right

5  will make it difficult for a defendant to prove that he was denied a speedy trial."  <u>Barker</u>, 407

6  U.S. at 532; <u>see</u> <u>United States v. Sears Roebuck</u>, 877 F.2d 734, 740 (9th Cir. 1989) ("failure

7  to assert [the] right to a speedy trial in a timely fashion . . . weighs heavily against

8  dismissal"); <u>United States v. Simmons</u>, 536 F.2d 827, 831 (9th Cir. 1976) ("failure to demand

9  a speedy trial will make it difficult for [defendant] to prove that there was an abridgement

10  of this guarantee").  <u>See also</u> <u>United States v. Kalady</u>, 941 F.2d 1090, 1095 (10th Cir. 1991)

11  (court was "unimpressed" when defendant's speedy trial demand was not asserted until "trial

12  itself was imminent"); <u>United States v. Vasquez</u>, 918 F.2d 329, 338 (2d Cir. 1990)

13  ("defendants waited roughly 22 months before advancing their speedy trial claims, and this

14  hardly renders plausible their contention that an expeditious resolution of their cases was a

15  matter of pressing constitutional importance for them").[1]

16  **4.    Prejudice.**

17    Prejudice typically is shown in three ways:  (1) oppressive pretrial incarceration;

18  (2) the anxiety and concern of the accused; and (3) the possibility that the accused's defense

19  will be impaired.  <u>Id.</u> at 654; <u>Beamon</u>, 992 F.2d at 1014.  Defendant cites the length of his

20  pretrial incarceration and impairment to his defense as sources of prejudice.  (Dkt. 945 at 5.)

21    Defendant "contends that time has eroded memories and physical evidence resulting

22  in actual prejudice."  (Dkt. 945 at 5.)  Specifically, Defendant expresses concern about the

23  memories of witnesses to the shootout at Harrah's Casino in Laughlin, Nevada, on April 27,

24  2002.  These events were recorded on videotape, but Defendant argues that the witness'

25

26    [1] Defendant McKay might also have objected to Defendant Smith's recent request for
27  an additional 60-day extension, but this objection cannot aid his motion because the Court
   denied Defendant Smith's request and refused to extend the trial date.  (Dkt. 1012.)

28

memories of the incident take on additional significance because the Government "has concealed the videotapes." (Dkt. 1076 at 4.)  Although it is true that some of the videotapes have not been produced in viewable form – an issue the Court has addressed in other orders – Defendant is not directly charged in the Laughlin incident.  As noted above, Defendant is charged with VICAR offenses, and the racketeering at issue in these offenses presumably includes the same pattern of racketeering that includes the Laughlin incident.  Thus, it is possible that the Government will seek to introduce evidence of the Laughlin events in support of the racketeering portion of its claim against Defendant.  But Defendant McKay makes no attempt to demonstrate what memories have been impaired or how that impairment will adversely affect his defense of the VICAR counts.[2]

Beyond citing the Laughlin incident, Defendant McKay offers no specific information to support his claim of prejudice.  Defendant has been incarcerated since September 2004, when he was arrested for allegedly threatening a federal officer while on pretrial release, but he offers only conclusory allegations that the period of pretrial incarceration has impaired his defense.  (Dkt. 945 at 5.)  Because Defendant has not "credibly point[ed] to any specific damage to his defense stemming from the delay in his trial," he has failed to make a showing that he has suffered prejudice under the Barker test.  Lam, 251 F.3d at 860; see Loud Hawk, 474 U.S. at 315 ("possibility of prejudice is not sufficient to support [defendant's] position that their speedy trial rights were violated"); Sears, 877 F.2d at 740.[3]

---

[2] Defendant's prejudice argument is compromised somewhat by the fact that he filed this motion only four months before trial.  If time has eroded witness memories, that erosion likely occurred during the two years that passed between the filing of the indictment and Defendant's assertion of his speedy trial rights.

[3] Even if the Court were to presume prejudice given the length of the delay in this case, such a presumptive is simply one factor to be considered in ruling on Defendant's motion.  Doggett, 505 U.S. at 656; see Beamon, 992 F.2d at 1012.  The Court cannot conclude that any presumed prejudice outweighs Defendant's failure to assert his speedy trial rights, and therefore would not grant Defendant's motion even if prejudice is presumed.

**5.   Balancing.**

Two of the four <u>Barker</u> factors slightly favor Defendant (length of delay and reasons for delay), one factor weighs heavily against him (Defendant's failure to assert his speedy trial rights in a timely manner), and one weighs slightly against him (Defendant's failure to show specific prejudice).  Balancing these factors, the Court concludes that Defendant has not established that the case against him should be dismissed.  The Court particularly is persuaded by the fact that Defendant acquiesced in several necessary trial extensions and did not assert his speedy trial rights until shortly before trial.

**IT IS ORDERED** that Defendant's Motion to Dismiss for Violation of Right to Speedy Trail (dkt. 945) is **denied.**

DATED this 15th day of February, 2006.

_____
David G. Campbell
United States District Judge